People v Solomon (2021 NY Slip Op 07519)





People v Solomon


2021 NY Slip Op 07519


Decided on December 28, 2021


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: December 28, 2021
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Renwick
Mazzarelli
Moulton
Scarpulla
Higgitt


Ind. No. 4545/11 Appeal No. 14716 Case No. 2016-01482 

[*1]The People of the State of New York, Respondent,
v
Clifton Solomon, Defendant-Appellant.



Defendant appeals from an order of the Supreme Court, New York County (James M. Burke, J.), entered on or about January 11, 2016, which adjudicated him a level three sexually violent offender pursuant to the Sex Offender Registration Act (Correction Law art 6-C).




Janet E. Sabel, The Legal Aid Society, New York (Natalie Rea of counsel), for appellant.
Cyrus R. Vance, Jr., District Attorney, New York (Noreen M. Stackhouse of counsel), for respondent.



Higgitt, J. 


Defendant appeals from an order of the Supreme Court, New York County (James M. Burke, J.), entered on or about January 11, 2016, which adjudicated him a level three sexually violent offender pursuant to the Sex Offender Registration Act (Correction Law art 6-C).
Janet E. Sabel, The Legal Aid Society, New York (Natalie Rea of counsel), for appellant.
Cyrus R. Vance, Jr., District Attorney, New York (Noreen M. Stackhouse of counsel), for respondent.
Higgitt, J. Factor 12 of the Sex Offender Registration Act (SORA) Risk Assessment Guidelines allows for the assessment of 10 points for a sex offender if he "has not accepted responsibility for his sexual misconduct." This appeal raises the issue of whether (and to what extent) a sex offender's participation in a sex offender treatment program is evidence that he has accepted responsibility for his misconduct. We conclude that a sex offender's participation in a sex offender treatment program is some evidence that the offender has accepted responsibility and that such evidence must be considered in conjunction with any other reliable evidence bearing on the subject (e.g., statements by the sex offender). In light of all of the evidence relevant to the subject of defendant's acceptance of responsibility for his misconduct, including his participation in a sex offender treatment program and his statements minimizing or denying responsibility for his misconduct, the SORA court correctly concluded that the People established, by clear and convincing evidence, that defendant had not genuinely accepted responsibility for his misconduct, and, accordingly, properly assessed defendant 10 points for Factor 12.
In September 2011, defendant was indicted on three counts of rape in the first degree (see Penal Law § 130.35[1]), one count of criminal sexual act in the first degree (see Penal Law § 130.50[1]), and one count of sexual abuse in the first degree (see Penal Law § 130.65[1]). The charges stemmed from defendant's sexual assault of an acquaintance in the acquaintance's apartment; defendant forced himself on the victim, subjecting her to unwanted, nonconsensual vaginal and oral sex.
Approximately two days after the sexual assault, defendant spoke to the victim on the telephone. The call was recorded. During the conversation, defendant apologized "for being too aggressive" and for forcing himself on her. Defendant acknowledged that the victim had said "no" and "please don't do this." He acknowledged, too, that he had injured her. However, defendant stated that "sometimes when a person says no, they mean yes."
Two days after the recorded telephone call took place, defendant was arrested. Incident to his arrest, defendant gave the police a detailed written statement. The statement presents a picture of consensual sexual conduct between defendant and the victim; no hint of nonconsensual sexual conduct or criminality is suggested by the statement.
On May 29, 2013, defendant pleaded guilty to [*2]the first-degree sexual abuse count in satisfaction of the indictment. In exchange for his plea to the class D felony, defendant was promised a sentence of 5 years' imprisonment and 10 years' postrelease supervision.
The Department of Probation prepared a presentence report. In that report, probation officials noted that defendant had acknowledged putting his mouth on the victim's breast but defendant said that the sexual contact was consensual. According to the probation officials, defendant told them that, after the sexual assault, the victim was upset because she had seen defendant with another woman.
Defendant's statements to the probation officials caused the sentencing court concern: the judge presiding over defendant's sentencing proceeding asked defendant, in light of the nature of his statements in the presentence report, whether he had, in fact, committed the crime to which he was pleading guilty. Defendant responded, without elaboration, that he had. Defendant was then sentenced in accordance with the plea agreement.
In July 2015 the Board of Examiners of Sex Offenders (the Board) issued the risk assessment instrument (the RAI) containing its recommendations regarding the points for which defendant should be assessed for the purposes of determining his presumptive SORA rating. In the RAI, the Board assessed defendant a total of 105 points, which corresponds to a presumptive level two classification.[FN1] As is relevant to this appeal, the Board, in its case summary, credited defendant with having accepted responsibility for his actions based on his participation, during his incarceration, in a program offered by the New York State Department of Corrections and Community Supervision: the Sex Offender Counseling and Treatment Program (the Program). As a result of the Board's finding that defendant had accepted responsibility for his actions, defendant was spared 10 points for Factor 12 of the RAI; had the 10 points been assessed, the resulting 115-point score would have made defendant a presumptive level three sex offender.
Prior to the SORA hearing before Supreme Court, the parties provided competing submissions to the court regarding whether it should assess defendant 10 points for Factor 12. The People argued that defendant's statements to the victim and probation officials reflected that he failed to genuinely accept responsibility for his conduct and that the SORA court should therefore assess him 10 points for Factor 12 (and concomitantly adjudicate him a level three sex offender). Defendant countered that his most recent expressions regarding his conduct  his statements at his plea and sentencing that he was guilty of the offense to which he pleaded guilty and his participation in the Program  demonstrated his acceptance of responsibility.
The SORA court agreed with the People's position with respect to Factor 12, assessed defendant 10 points for that factor, found that defendant's total score was 115 points, and adjudicated [*3]him a level three sex offender.[FN2]
On appeal, defendant maintains that the People failed to establish, by clear and convincing evidence, that points should be assessed for Factor 12, because his most recent expressions regarding his conduct (his guilty plea and his participation in the Program) demonstrate that he accepted responsibility for his conduct. Defendant insists that the statements he made prior to sentencing are not the best evidence of whether he accepted responsibility and that those statements do not clearly and convincingly establish that he did not accept responsibility.
The People contend that the SORA court correctly concluded that defendant did not accept responsibility for his conduct. Stressing that a defendant must demonstrate genuine acceptance of responsibility, the People argue that defendant's multiple presentence statements minimizing or denying his sexual misconduct demonstrate clearly and convincingly that he does not, in fact, accept responsibility for sexually assaulting the victim. Defendant's apology to the victim and conclusory statements at the plea and sentencing proceedings acknowledging his guilt ring hollow, the People contend, because the apology and statements conflict with his more detailed statements to the police and probation officials minimizing or denying responsibility for the sexual assault. The People argue that defendant's participation in the Program was accounted for in the RAI because, by virtue of participating in the Program, defendant avoided an assessment of 15 points for the subcategory of Factor 12 for a defendant's refusal to participate in or expulsion from a sex offender treatment program.
Under the SORA scheme, "[i]n advance of a sex offender's release from prison, the Board must complete [an RAI], assessing points based on the risk factors set forth in the [Sex Offender Registration Act, Risk Assessment Guidelines & Commentary, 2006 (the Guidelines)], to recommend to the SORA court 'one of three-statutorily-prescribed levels of notification—level one, two, and three in ascending order of risk—based on an offender's calculated risk to reoffend'" (People v Perez, 35 NY3d 85, 88 [2020], rehg denied 35 NY3d 986 [2020], citing People v Francis, 30 NY3d 737, 743 [2018] and Correction Law § 168—l[6]). "An offender's risk-level designation typically corresponds to the total number of points assigned for the 15 risk factors enumerated in the Guidelines (see Guidelines at 3)" (People v Perez, 35 NY3d at 88).
In ascertaining whether points should be assessed for a particular factor, the Board and the SORA court may consider a broad range of presumptively reliable information: "Information may include, but may not be limited to all or a portion of the arrest file, prosecutor's file, probation or parole file, child protective file, court file, commitment file, medical file and treatment file pertaining to such person" (Correction Law § 168-m; see Guidelines at 5). "Points should [*4]not be assessed for a factor . . . unless there is clear and convincing evidence of the existence of that factor" (Guidelines at 5), and the People bear the burden of making that showing (Correction Law § 168-n[3]).
While the Board has expertise in evaluating the risk that a sex offender will commit an additional sex offense (or offenses) and the threat that the offender poses to public safety (see Correction Law § 168-l[1], [5], [6]; Guidelines at 1), it is the SORA court that is charged with the ultimate responsibility for determining the factors for which a sex offender should be assessed points and, thus, the offender's risk level (see Correction Law § 168-n[2], [3]). The SORA court is not bound by the Board's recommendations reflected in the RAI but, rather, must make its own determinations based on the evidence (People v Cook, 29 NY3d 121, 125 [2017]).
The specific factor at issue on this appeal, Factor 12, has two provisions. The first, the provision for which the SORA court assessed points, states that an offender should be assessed 10 points if he "has not accepted responsibility for his sexual misconduct" (SORA Factor 12). The second, which is not directly implicated here, states that an offender should be assessed 15 points if he "has refused or been expelled from treatment subsequent to sentencing" (id.).
The Commentary to Factor 12 provides, in relevant part:
"An offender who does not accept responsibility for his conduct or minimizes what occurred is a poor prospect for rehabilitation. Such acknowledgment is critical, since an offender's ability to identify and modify the thoughts and behaviors that are proximal to his sexual misconduct is often a prerequisite to stopping that misconduct. The guidelines assess 10 points to an offender who has not accepted responsibility for his conduct and 15 points are assessed to an offender who has refused or been expelled from a sex offender program. In scoring this category, the Board or the court should examine the offender's most recent credible statements and should seek evidence of genuine acceptance of responsibility . . . The guidelines add five points if the offender has refused or been expelled from treatment since such conduct is powerful evidence of the offender's continued denial and his unwillingness to alter his behavior" (Guidelines at 15-16 [internal citations omitted; emphasis added]).
Case law reinforces that genuine acceptance of responsibility for one's misconduct is key. In this connection, we have concluded that when a sex offender has made conflicting statements regarding his responsibility for his sexual misconduct  some expressing responsibility for the misconduct (such as a guilty plea) and some minimizing or denying responsibility  a SORA court is justified in assessing 10 points for Factor 12 (see e.g. People v Lozada, 197 AD3d 1073 [1st Dept 2021]; People v Hatcher, 132 AD3d 407 [1st Dept 2015], lv denied 26 NY3d 915 [2016]). Decisions from the [*5]other Departments are to similar effect (see e.g. People v DePerno, 165 AD3d 1351 [3d Dept 2018], lv denied 32 NY3d 915 [2019]; People v Johnson, 85 AD3d 889 [2d Dept 2011], lv denied 17 NY3d 713 [2011]; People v Vega, 79 AD3d 718 [2d Dept 2010], lv denied 16 NY3d 710 [2011]; People v Baker, 57 AD3d 1472 [4th Dept 2008], lv denied 12 NY3d 706 [2009]; People v Carman, 33 AD3d 1145 [3d Dept 2006]; People v Fortin, 29 AD3d 765 [2d Dept 2006], lv denied 7 NY3d 712 [2006]; People v Mitchell, 300 AD2d 377 [2d Dept 2002], lv denied 99 NY2d 510 [2003]; People v Chilson, 286 AD2d 828 [3d Dept 2001], lv denied 97 NY2d 655 [2001]).
The relevant appellate decisions suggest that, when considering whether to assess (or spare) 10 points for Factor 12, a sex offender's participation in a sex offender treatment program is some evidence of genuine acceptance of responsibility that is considered in conjunction with any other reliable evidence bearing on the subject (e.g., statements by the sex offender) (see e.g. People v Vasquez, 149 AD3d 1584 [4th Dept 2017], lv denied 29 NY3d 916 [2017]; People v Benson, 132 AD3d 1030 [3d Dept 2015], lv denied 26 NY3d 913 [2015]; People v Gudino-Sanchez, 116 AD3d 565 [1st Dept 2014]; People v Malave, 106 AD3d 657 [1st Dept 2013], lv denied 25 NY3d 1204 [2015]; People v James, 99 AD3d 775 [2d Dept 2012], lv denied 21 NY3d 908 [2013]; People v Johnson, 85 AD3d 889).[FN3] Because the acceptance of responsibility must be genuine, the People can (and often do) satisfy the clear-and-convincing showing required for an assessment of 10 points under Factor 12 based on a sex offender's statements minimizing or denying responsibility for his sexual misconduct notwithstanding that the offender participated in a sex offender treatment program (see, e.g., People v Vasquez, 149 AD3d 1584; People v Benson, 132 AD3d 1030; People v Gudino-Sanchez, 116 AD3d 565; People v Malave, 106 AD3d 657; People v James, 99 AD3d 775; People v Johnson, 85 AD3d 889).
The Commentary does not specify the effect, if any, that a sex offender's participation in sex offender treatment has on the Factor 12 10-point assessment. Notably, however, it highlights that a sex offender is assessed 15 points (instead of 10) when he "has refused or been expelled from treatment since such conduct is powerful evidence of the offender's continued denial and his unwillingness to alter his behavior" (Guidelines at 16). If refusal or expulsion from sex offender treatment is powerful evidence of an offender's continued denial of responsibility, then the converse should be true (at least to some degree): that participation in sex offender treatment is evidence of an offender's acceptance of responsibility. The weight to be given to a sex offender's participation in a sex offender treatment program will depend, among other things, on the length of time the offender participated in the program, the nature of the specific program, and whether the offender completed the program (see generally [*6]People v Munafo, 119 AD3d 1102 [3d Dept 2014]).
A defendant's participation in a sex offender treatment program could be highly probative as his most recent expression of acceptance of responsibility for the misconduct. Indeed, evidence that the program resulted in a change in the defendant's attitude, that is, that the defendant acknowledged the wrongdoing and genuinely regretted the offense, could be sufficient to overcome evidence that the defendant had not accepted responsibility for the misconduct prior to entering the program (see e.g. id., 119 AD3d at 1103 [In light of the unchallenged expert opinion that defendant's therapeutic treatment goals had been met, that he did not require additional sexual offender treatment, that he was prepared to live safely in the community, and that he was "in the lowest risk cohort" to reoffend, the Third Department found that the requisite standard of clear and convincing evidence that the defendant had not accepted responsibility for his misconduct was not met]). Ultimately, it is the totality of the circumstances that determines the probative value of a defendant's participation in a sex offender treatment program in ascertaining whether he accepted responsibility for his misconduct. 
Here, defendant's statements to the victim in the recorded telephone call suggested that he had some remorse for his misconduct, and he acknowledged twice in open court (once at his plea and once at his sentencing) that he was guilty of sexual abuse in the first degree. However, in both his detailed written statement given to the police at the time of his arrest and in his statement to probation officials in connection with the preparation of his presentence report, defendant essentially denied his misconduct, asserting that the sexual conduct was consensual. (In addition, during the recorded telephone call, defendant made the contemptible statement that "sometimes when a person says no, they mean yes.") Defendant's equivocal statements regarding his responsibility caught the attention of two judges at nisi prius: the sentencing court and the SORA court. The record before us contains no clear and unambiguous statement by defendant demonstrating genuine acceptance of responsibility.
Defendant's participation in the treatment Program does not undercut the People's clear and convincing evidence, manifested by defendant's statements minimizing or denying responsibility for his misconduct. Defendant offered no particulars regarding the Program; on appeal, he claims merely that "[w]hile incarcerated . . . he participated in the [Program] where his performance was satisfactory, but after a year the program closed." For example, defendant did not describe the nature or content of the Program, did not indicate the extent to which he completed the Program, and did not explain the basis for his conclusion that "his performance [in the Program] was satisfactory." Moreover, defendant provided no records or documents related [*7]to the Program (see generally People v Munafo, 119 AD3d at 1103). Thus, the SORA court was justified in giving little to no weight to defendant's participation in the Program in determining whether he accepted responsibility for his misconduct (see People v Gudino-Sanchez, 116 AD3d at 566; People v Malave, 106 AD3d at 659).[FN4]
In conclusion, the SORA court correctly determined that the People established, by clear and convincing evidence, that defendant had not genuinely accepted responsibility for his misconduct, and assessed him 10 points for Factor 12.
Accordingly, the order of the Supreme Court, New York County (James M. Burke, J.), entered on or about January 11, 2016, which adjudicated defendant a level three
sexually violent offender pursuant to the Sex Offender Registration Act (Correction Law art 6-C), should be affirmed, without costs.
Order, Supreme Court, New York County (James M. Burke, J.), entered on or about January 11, 2016, affirmed, without costs.
Opinion by Higgitt, J. All concur.
Renwick, J.P., Mazzarelli, Moulton, Scarpulla, Higgitt, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: December 28, 2021



Footnotes

Footnote 1: The Board noted that it did not recommend a downward departure to a level one classification.

Footnote 2: Because of the particular sex offense to which he pleaded guilty, defendant was designated a "sexually violent offender." This designation, coupled with defendant's risk level, determines the length of his SORA registration (see Correction Law § 168-h).

Footnote 3: To the extent that People v DePerno (165 AD3d 1351) suggests that a sex offender's participation in a sex offender treatment program is not relevant in gauging whether the offender genuinely accepts responsibility for his misconduct, we decline to follow it.

Footnote 4: While defendant's participation in the Program is his most recent expression relating to whether he accepts responsibility for his misconduct, for the reasons discussed above, that expression is not credible (see Guidelines at 15 ["In scoring th[e] [10-point provision of Factor 12], the Board or court should examine the offender's most recent credible statements and should seek evidence of genuine acceptance of responsibility."]).